Ilslet, J.
The plaintiffs sue to recover from the defendant tho amount of a penal obligation inserted in an agreement entered into by the latter, professedly as the agent of the master and owners of the steamship R. R. Cuyler, for whom it appears he was not authorized to act, blit by which agreement he bound himself personally, in the manner stated therein.
The plaintiffs wore the consignees, respectively, of certain articles of merchandise, shipped to them on the Cuyler, at New York, for the port of New Orleans, and which freight was delivered to them in a damaged condition.
The defendant, who was the general agent of the steamship R. R. Cuyler, disputed the liability of the master and owners, and in order that he might have time to confer with them respecting an amicable or legal settlement of the claim, the plaintiff's, consignees of the damaged articles, agreed not to institute in the meantime legal proceedings against the ship. Tho agreement contained the'following stipulations:
1st. That the said Alfred Moulton shall be allowed sufficient time, say about thirty days, to correspond with the owners of said vessel, touching the adjustment of the claims of the said consignees, for the damage aforesaid.
2d. That if, after tho lapse of the aforesaid time, the said owners should refuse to pay said damage, the dispute shall be determined by an amicable lawsuit, or submitted to arbitration, one of the arbitrators to bo selected by the consignees, and the other by the owners of the vessel;, and in case the arbitrators should not agree, they shall nominate an umpire, whose decision in the premises shall he final. •
3d. That in case either party should appeal from, or contravene the award, he shall pay to the other party a penalty of ten thousand dollars.
4th, That the said Alfred Moulion shall be liable in the place of said *536 captain and owners, in case they should fail to satisfy such judgment or perform such award as may he rendered or made in favor of said, consignees, and against said captain and owners, of and concerning the controversy aforesaid.
At the expiration of the thirty days, during which no legal proceedings were taken against the steamship, the plaintiffs, having received no communication whatever from the owners or their agent, on the 5th January, 1866, gave notice in writing to Alfred Moulton, agent of the owners of the steamship, that they had selected a person to act as arbitrator, who had accepted the appointment, and called on him in his capacity of agent, for the owners of the steamship, and also as a party to the agreement or contract in question, to select an arbitrator, and to proceed to the determination of the dispute, as to the damage done to the merchan' dise, according to the true intent of the parties to it. To this notice Moulton replied by letter, dated 8th January, 1866, and stated that having no authority from the owners of the steamship “R. R. Ouyler” to act in their names, in the matter of “ your ” claims against the aforesaid vessel, I must respectfully decline to comply with the request contained in your communication; I would also add that my understanding and reading of the second article of the agreement entered into between us, does not make it compulsory to arbitrate the matter in dispute, but loaves the question to be determined by an amicable lawsuit, or submitted to an arbitration. Against the plaintiffs’ demand, the defendant, on his plea of the general issue, had judgment in the lower court, from which the plaintiffs appeal. The first question to be disposed of is, is the defendant, Moulton, personally bound by the agreement or contract entered into by him with the plaintiff, on the 28th October, 1865?
By Art. 2979, O. 0., “ the attorney cannot go beyond the limits of his procuration; whatever he does in exceeding his power is null and void, with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity.
In Richie v. Rass, 15 A. 668, it was held that: “ Where a contract is entered into by one assuming to act as agent of another, without having-been authorized to make the contract, such pretended agent is by law responsible personally in the precise terms of the contract.”
By Art. 2981, O. C. “If a mandatary communicates his anthority to a person with whom he contracts in that capacity, he is not answerable to the latter for anything done beyond it, unless he has entered into a personal guarantee.”
The plaintiffs knew that the stipulations of the agreement made by the defendant for the persons for whom he undertook to act, needed their assent and ratification; and, therefore, the personal guarantee of the defendant, contained in the sixth clause, was entered into by the defendant. He promised, and ‘ ‘ s'esl porté fort, ” that the parties for whom he professed to act, would accomplish what was stipulated for them; and if they did not do so, he would himself carry out the agreement, and by so doing he became conditionally, but personally bound. C. C. 1883. C. N. 1119, 1120, Marcadé, vol. 4, p, 362, g 430, et seq.
The third clause of the agreement imposes a penalty of ten thousand dollars on either party, who shall appeal from or contravene the award.
*537 The second clause provides, that the dispute in relation to damages, etc., shall be determined “by an amicable lawsuit, or submitted to arbitration. ”
Each contracting party puts his own interpretation, as to the mode in which the dispute was to be settled — the plaintiff contending that it was to be solely by arbitration, whilst the defendant maintains that it was to be accomplished either by arbitration or by an amicable lawsuit.
No rule of construction is more inflexible than this, that the intention of the parties is to be ascertained, and effect given to it, and all the clauses of the contract.
No construction, rendering important expressions useless, is admissible; and all clauses must be construed the one by the other, giving the sense to each resulting from the entire act. Ex anliceclenlibus et consequeniibus Jit optima interpreialio.
From the general tenor of the whole act, two alternative modes of proceeding to ascertain the damages sustained by the plaintiffs were contemplated; “the dispute,” says the act, “shall be determined by an amicable lawsuit or submitted to arbitration.”
The words arbitration and amicable lawsuit were not used as convertible terms, nor does the word amicable, prefixed to the words lawsuit, convey the idea of arbitration. The correctness of this interpretation is manifest by the wording of the sixth clause of the agreement, read in conuection with the second clause, by which the defendant was to be liable for the captain and owners of the R. R. Cuyler, in case they should fail to satisfy such judgment, or perform such award as may be rendered or made in favor of the said consignees of, and concerning the controversy.
By the .terms arbitration and amicable lawsuit, as understood in their common and usual signification, the former means a reference or submission of a matter in dispute to the decision of one or more persons as arbitrators, whilst the latter, an amicable lawsuit is one instituted in a court of justice seriously, but in a friendly spirit, in order that some matter in controversy may, by a judicial decree, be settled definitely, as cheaply, and with as little delay as possible.
A submission to judicial arbitrators, in accordance with Art. of the Code of Practice, et seq, was not intended, as such a reference could have only been directed by a judge during the pendency of a suit, and that would have rendered necessary a resort to two modes of proceeding when only one mode was provided for, — arbitration, or an amicable law!, suit.
Rad it been agreed that the dispute should be settled solely by an amicable lawsuit, would it not be a strained construction of that term to hold that mode of proceeding identical with a submission to arbitrators? and would it be less so, to interpret the two terms, placed in opposition with each other, to mean one and the same thing?
The conditional undertaking of the defendant was “to satisfy such judgment, or perform such award as might be rendered or made in favor of the consignees and against the captain and owners of the R. R. Cuy•lei- and' if arbitration is now impracticable, it is incumbent on him to *538 satisfy such judgment as may be rendered in an amicable lawsuit, if those for whom he acted refuse to do so, otherwise, he is liable on his penal obligation, after being put legally in morn, which is an essential prerequisite to an action on a penal obligation.” 0.0.1906. 6 R. 450. 10 R. 425.
The very able argument of the plaintiff’s counsel has failed to satisfy us that there is any error in the judgment of the lower court.
It is therefore ordered, adjudged and decreed that the judgment of the lower court appealed from be and it is hereby affirmed, the costs of appeal to be paid by the plaintiff and appellant.